# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

STEVE WHITMORE, on behalf of )
himself and others similarly situated, )
                                        )
         Plaintiffs,                  )     No. 10 C 2518
                                        )
v.                                        )
                                        )     Judge Edmond E. Chang
KRAFT FOODS GLOBAL, INC.,     )
                                        )
         Defendant.                 )

### MEMORANDUM OPINION AND ORDER

Plaintiff Steven Whitmore alleges that his employer, Defendant Kraft Foods, owes him back pay for time spent donning and doffing protective gear as part of his employment. Whitmore filed suit in Cook County Circuit Court, alleging violations of the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act. Kraft filed a notice of removal, R. 1,[1] arguing that because resolution of the claims requires interpreting a collective bargaining agreement, the state law claims are preempted. Whitmore moved to remand to state court, R.13, but before deciding that motion, this Court[2] issued a stay until the resolution of a Seventh Circuit case regarding a similar dispute. The stay was lifted after the Seventh Circuit issued its opinion in *Spoerle v. Kraft,* 614 F.3d 427 (7th Cir. 2010). After reviewing *Spoerle* and

---

[1]Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

[2]This case was originally assigned to another judge, and then reassigned to this Court on January 7, 2011.

other statutory, regulatory, and case law, the Court grants Plaintiff's motion to remand.

## I.

Plaintiff Steven Whitmore is an employee of Defendant Kraft Foods. R. 6, Exh. 1 ¶ 5. He works in Kraft's Chicago plant on South Kedzie. *Id.* ¶¶ 4-5. At the beginning of his work day, Whitmore is required to put on protective equipment, including: "safety footwear, white frocks, hairnets, earplugs, hardhats, bump hats and protective aprons." *Id.* ¶ 7. After donning these items, he walks over to his work location. *Id.* ¶ 9. At the end of the work day, Whitmore returns to where the equipment was donned. *See id.* ¶ 10. There, he removes all of the protective equipment. *Id.* Kraft does not pay Whitmore for any of these activities. *Id.* ¶ 11.

Whitmore's employment is governed by a collective bargaining agreement. R. 24, at 4. The agreement lays out the conditions of employment, including how work hours are calculated. R. 24, Exh. A. There is a specific provision that states that "time spent in changing clothes, washing and engaging in any other non-productive activities at the beginning or end of each workday" will not be compensated. R. 24 at 4-5, R. 24, Exh. A (CBA, Article 14).

In January 2010, Whitmore filed suit in Cook County. R. 6. Specifically, he sought compensation for the time spent donning and doffing protective equipment. *Id.* In his two-count complaint, Whitmore alleges violations of (1) the Illinois Minimum

Wage Act, 820 ILCS 105/1, *et seq*, and (2) the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq*. *Id.*

In April 2010, Kraft removed the case to federal court. R. 1. Whitmore promptly filed a motion to remand to state court. R. 13. Kraft responded by filing a motion to stay, requesting that the Court wait for the Seventh Circuit to decide a case involving similar issues. R. 9. The Court granted the stay and denied the motion to remand without prejudice. R.15. On August 2, 2010, the Seventh Circuit issued its decision in *Spoerle v. Kraft Foods*, 614 F.3d 427 (7th Cir. 2010). The stay was lifted, R.17, and Whitmore filed a renewed motion to remand that included a discussion of *Spoerle*. R.21. That motion is now fully briefed before this Court.

**II.**

Removal is governed by 28 U.S.C. § 1441, which provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Only state-court actions that originally could have been filed in federal court may be removed to federal court." *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state

3

court." *Schur v. L.A. Weight Loss Ctrs.*, 577 F.3d 752, 758 (7th Cir.2009) (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993)).

In general, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The usual test for federal question jurisdiction under § 1331 is the "well pleaded complaint rule," which requires federal courts to look only at the complaint itself "to determine if the case arises under federal law.*" Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 402 (7th Cir. 2001)). In addition, "[c]omplete preemption 'confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" *Nelson v. Welch* (*In re Repository Techs.*), 601 F.3d 710, 722 (7th Cir.2010) (citing *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)). "Under this jurisdictional doctrine, certain federal statutes have such 'extraordinary pre-emptive power' that they 'convert [ ] an ordinary state common law complaint into one stating a federal claim.'" *Id.* (citing *Franciscan Skemp Healthcare, Inc., 538 F.3d at 596; Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004)). "Complete preemption, therefore, creates an exception to the rule that courts look only to the plaintiff's well-pleaded complaint to determine whether federal jurisdiction exists. If the complaint pleads a state-law claim that is completely preempted by federal law, the claim is removable to federal court." *Id.* (citing *Franciscan Skemp Healthcare, Inc.*, 538 F.3d at 596-97.)

4

Federal preemption of disputes over collective bargaining agreements (CBA) was intended to "authorize[] federal courts to fashion a body of federal law for [their] enforcement."[3] *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957). The Court explained the reason why uniformity of interpretation was important in *Teamsters v. Lucas Flour*, 369 U.S. 95 (1962). "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Id.* at 103. Congress was concerned that disputes based on CBAs would be unpredictable if parties were unsure about what substantive laws would govern their interpretation. As a result, Congress included § 301 in the Labor Management Relations Act, which states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. Preemption is triggered when a claim is "founded directly on rights created by collective bargaining agreements," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987), and when the resolution of a state law claim "depends on the meaning

---

[3]Whitmore has filed motions to strike sections of John Geso's declaration. R. 27, 31. First, Whitmore argues that a number of statements made in the declaration lack foundation. *Id.* ¶1, R.31 ¶1. Second, Whitmore argues that the attached Union Contract inappropriately attempts to circumvent state law. *Id.* ¶3. But district courts may properly look beyond the face of the complaint to determine when deciding whether federal preemption exists. *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1488 (7th Cir. 1996). Therefore, this Court denies Whitmore's motions to strike.

of, or requires the interpretation of, a collective bargaining agreement." *Loewen*, 65 F.3d at 1421 (citing *Lingle*, 486 U.S. at 405-06). Put another way, a claim is preempted if it is "substantially dependent on an analysis of the terms of the collective bargaining agreement." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir.1996). Put still another way, § 301 has preemptive effect if the meaning of a contract term is at the heart of the dispute. *Livadas*, 512 U.S. at 124; *Caterpillar*, 482 U.S. at 394.

But merely because uniform interpretation is desirable does not mean that federal preemption applies whenever a CBA is involved. Not every dispute that tangentially involves a provision of a collective bargaining agreement is preempted. *Allis-Chalmers*, 471 U.S. at 211. "[I]t would be inconsistent with congressional intent under [§301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Caterpillar*, 482 U.S. at 395 (citing *Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 212 (1985)). Preemption will not occur if a dispute merely requires reference to, or consultation of, an agreement. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285 (7th Cir. 2001). Whether § 301 operates to preempt a particular state law claim is a matter for "case-by-case factual analysis." *In re Bentz*, 253 F.3d at 285.

### III.

### A.

What happens when the terms of the CBA conflict with state law? The Seventh Circuit addressed this question directly in *Spoerle v. Kraft*, 614 F.3d 427 (7th Cir.

6

2010). The dispute in *Spoerle* is similar to the one in the present case. In *Spoerle*, the plaintiffs, a group of Wisconsin residents, sought to recover compensation for time spent doffing and donning safety equipment. *Spoerle v. Kraft*, 626 F. Supp.2d 913, 914 (W.D. Wis. 2009). They filed suit against Kraft, their employer, and brought claims under the Fair Labor Standards Act (FLSA) and under the Wisconsin labor laws. *Id.* Both parties agreed that under state law, doffing and donning compensation was mandatory. *Id.* But Kraft argued that state law was preempted by § 203(o) of the FLSA, which generally permits a CBA to exclude time spent changing clothes. *Id.* at 916. The district court held for the employees, explaining that the state law was *not* preempted by § 203(o). *Id.* at 921.

The Seventh Circuit affirmed and held that § 203(o) could not override Wisconsin state law that mandated compensation for doffing and donning. The Court shot down Kraft's argument that § 203(o) operated to allow a CBA to supersede "rules otherwise applicable to determining the number of hours worked." *Spoerle*, 614 F.3d at 429. As the Seventh Circuit explained:

> Nothing that labor and management put in a collective bargaining agreement exempts them from state laws of general application . . . . States can set substantive rules that determine the effective net wage, even when a CBA plays a role.

*Id.* at 430. In other words, a CBA cannot trump rights to which employees are entitled under state law: "Management and labor acting jointly (through a CBA) have no more power to override state substantive law than they have when acting individually." *Id.* That reasoning applies equally well to reliance on LMRA § 301 preemption in lieu of

7

(or in addition to) § 203(o) preemption. For example, if the employees in *Spoerle* had not brought an FLSA claim and Kraft had relied only on § 301 preemption (rather than § 203(o)), Kraft's argument would have fared no better for the same reason: a CBA cannot override a generally applicable state wage-and-hour statute.

In this case, Kraft contends that *Spoerle* is distinguishable because here the parties disagree over whether Illinois law requires doffing and donning to be compensated. *Compare* R. 28 at 4 *with* R. 24 at 8. The Illinois Minimum Wage Law (IMWL) does not explicitly mention doffing and donning anywhere. 820 ILCS 105/1, *et seq*. Nor are there, as far as this Court is aware, any Illinois cases that hold that doffing and donning must be compensated – although there are also no cases holding that doffing and donning time is not compensable time. Kraft argues that the absence of explicit textual reference to "donning" and "doffing" means that Illinois does *not* require doffing and donning compensation. R.24 at 13. If Plaintiff has any right to such compensation, Kraft argues, the right necessarily arises from the terms of the CBA, thus requiring preemption.

But Kraft's argument is premised, as noted above, on a determination that the IMWL's lack of explicit textual reference to "donning" and "doffing" means that the statute does not by itself require compensation for those activities. The IMWL requires that an employee "receive[] compensation for his employment" in excess of 40 hours per workweek. 820 ILCS 105/4a(1). To be sure, as Kraft notes, the words "donning" and "doffing" do not appear in the IMWL. But that does *not* mean that those activities fall

outside of a worker's "employment" for which overtime compensation is required. Many statutes use broad terms that require interpretation in order to determine whether the broad term encompasses more specific categories of conduct. The broad term could be characterized as "silent" as to the more specific category, but that silence does not automatically equate to non-coverage. For example, the IMWL does not mention whether the time spent by a worker in a meeting with a supervisor to receive a job performance review is covered "employment" which counts against the 40-hour workweek, but the absence of the words "job performance review" in the IMWL does *not* automatically mean that those reviews are not compensable "employment" time. Interpretation of the broad term is required to conclude whether a specific activity is or is not covered "employment."

Another example undermining Kraft's premise that silence automatically equals non-coverage is the set of regulations issued by the Illinois Department of Labor to implement the IMWL itself. Those regulations require overtime pay for the "hours worked" in excess of the 40-hour workweek. 56 Ill. Admin. Code 210.430. "Hours worked" is defined as "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code 210.110. Again, neither "hours worked" nor its regulatory definition explicitly mention specific job activities (to use the same example as above, job performance reviews are not specifically mentioned), but that absence simply means that courts must apply the broad definition to specific facts to determine whether a particular activity is covered.

9

Kraft argues that "the Court will need to consider whether items [described] as 'personal protective equipment' qualify as 'clothes'" under the CBA, and if not, "the Court must then consider whether these activities were otherwise excluded from compensation by [the CBA's] catch-all provision." R.24 at 9. But the CBA's *contractual* rights are still subject to state labor laws – a minimum standard that no amount of bargaining can avoid meeting. Kraft's argument is once again premised on the assumption that Illinois state law *allows* employers to disregard doffing and donning time.

Thus, the Court rejects Kraft's argument that *Spoerle* is distinguishable simply because Wisconsin's wage laws explicitly refer to "changing clothes" as compensable time, Wis. Admin. Code § DWD 272.12(2)(e)(1)(c), whereas Illinois's wage laws do not contain a similar explicit reference. Perhaps the Illinois state courts will interpret "employment" under the IMWL to exclude donning and doffing activities, but perhaps the state courts will interpret those activities to be covered. That state-law-based claim – not a claim based on, or requiring interpretation of, the CBA – is what Whitmore seeks to press in the Illinois state courts. If the IMWL covers donning and doffing, then *Spoerle* instructs that the CBA is ineffectual in excluding those activities from employment time. If the IMWL does not cover donning and doffing, then Whitmore will lose, but that loss will be the result of *state law*'s non-coverage of those activities, not the result of federal preemption.[4]

---

[4]The Court respectfully disagrees with the cases cited by Kraft which rely on the absence of an explicit textual reference. *Curry v. Kraft*, a post-*Spoerle* case from this district.

**C.**

In support of preemption, Kraft relies on three Illinois Appellate Court cases. *Carletto v. Quantum Foods*, 2006 WL 2018250 (Ill. App. Ct. 2006); *Kostecki v. Dominick's Finer Foods*, 836 N.E.2d 837, 845 (Ill. App. Ct. 2005); *Gelb v. Air Con Refrigeration and Heating*, 826 N.E.2d 391, 399 (Ill. App. Ct. 2005). But the line of cases is unpersuasive here. First, all three pre-date *Spoerle*, and there is no consideration in any of the three cases that a CBA cannot override generally applicable minimum standards set by state labor law.

Second, only one of the three cases actually involved donning and doffing, *Carletto*, and that case is an unpublished order. Illinois Supreme Court Rule 23(e) deems unpublished orders as having no precedential effect and indeed bars citation of unpublished orders except for double jeopardy, claim or issue preclusion, and law of the case purposes. The other two cases, *Kostecki* and *Gelb*, involved allegations that employees had been required to work "off the clock" (*Kostecki*) and allegations of union-fund deductions from pay scales (*Gelb*), and thus those cases did not consider whether the IMWL, by its own force and without being trumped by the CBA, required counting certain job activities in the 40-hour workweek. Accordingly, not only did *Kostecki* and

---

2010 WL 4338637, at *5 (N.D. Ill. 2010); *Mitchell v. JCG Indus.*, – F. Supp. 2d –, 2011 WL 2143576, at *7 (N.D. Ill. May 31, 2011). Those cases implicitly hold that the IMWL does not, by its own terms and force, require compensation for donning and doffing time. To illustrate that point, consider the following: if in another case – one not involving a CBA – the Illinois Supreme Court were to interpret the broad terms of the IMWL to require compensation for donning and doffing time in the 40-hour workweek, then would preemption (and dismissal) of the IMWL claims be correct merely because a CBA purported to exclude payment for donning and doffing? *Spoerle* answers that question: no preemption.

11

*Gelb* pre-date *Spoerle*, they are distinguishable from this case, where the CBA quite plainly does not provide for donning and doffing compensation, and there is thus no need to interpret any provision of the CBA.[5]

**D.**

Finally, Kraft argues that the CBA provides – on the whole – more generous terms than what is minimally required by the IMWL. R.24 at 10; *see Curry*, 2010 WL 4338637 at *6 ("Further, the terms of the CBA provide more generous compensation options than the IMWL and IWPCA.") But merely because the hourly rate is more generous than what the IMWL requires does not mean that employers are free to calculate hours in any way they wish. The Seventh Circuit emphasized this point in *Spoerle* by deeming "ineffectual"

> [a]n agreement along the lines of: "Because our base hourly rate is more than 150% of the minimum wage, we need not pay overtime rates under state law."

614 F.3d at 430. If state law requires doffing and donning compensation, Kraft cannot avoid that requirement by offering more compensation for higher hourly pay. In any event, it is also worth noting that the same CBA article that excludes doffing and donning activities also recognizes the possibility that a legal obligation could compel

---

[5]Kraft argues that even if state law requires doffing and donning compensation, these provisions must be interpreted to determine how much back pay is owed to the plaintiffs. According to Kraft, there is no way around the CBA. But referencing the CBA in order to calculate wages owed does not automatically lead to federal preemption. "[A] state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis *would not be thereby pre-empted*." *Lingle*, 486 U.S. 399, 413 n.12 (1988) (emphasis added). Here, there is no dispute over whether the CBA provides Whitmore with any rights to doffing and donning compensation.

Kraft to pay for such activities, and if that occurs, then the employees' hourly pay will be reduced to offset that pay increase:

> If, at any time in the future, the Company should be required by law or otherwise to pay separately for any non-productive activities as such, then and at that time, the straight-time hourly classification rates then in effect shall be reduced by the amount to be paid separately for such non-productive activities.

R. 24, Exh. A at 10 (CBA, article 14). This reduction provision undermines Kraft's argument that, on the whole, the CBA provides wages in excess of wages that would be paid if donning and doffing must be a paid activity.[6]

## IV.

Federal preemption of state laws has generally applied when "state laws create a risk of taking away employee rights provided by collective bargaining or becoming entangled in the collective bargaining process, not when state laws add a right that is independent from the agreement." *Spoerle v. Kraft*, 626 F. Supp.2d 913, 914 (W.D. Wis. 2009) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 118 (1994)). The purpose behind federal preemption in this context is to provide uniformity of interpretation. Where

---

[6]Kraft also insists that, because the IMWL specifically mentions collective bargaining, an interpretation of the CBA is inevitable. R. 24, at 13. Specifically, Kraft points to this provision within the IMWL:

> Nothing in this Act is deemed to interfere with, impede, or in any way diminish the right of employees to bargain collectively with their employers through representatives of their own choosing in order to establish wages or other conditions of work in excess of the applicable minimum standards of the provisions of this Act.

820 ILCS 105/14. It is true that employees and employers are free to negotiate a CBA, but § 14 requires that the resulting agreement be "in *excess* of the applicable *minimum* standards." *Id.* (emphasis added). If the minimum standard requires doffing and donning compensation, the CBA is not free to disregard those hours.

that is not at stake, as in this case, § 301 does not convert state law complaints into federal claims merely because the parties have entered into a CBA.[7] For all the reasons discussed above, the Court grants Plaintiff's motion to remand. R. 13.

ENTERED:

_Edmond E. Chang_
Honorable Edmond E. Chang
United States District Judge

Date: June 27, 2011

---

[7] The complaint's second count asserts a violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*. R. 6 at ¶ 14. That Act requires timely payment of "wages," which is defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties . . . ." 820 ILCS 115/2. But both the complaint and Plaintiff's repeated representations make clear that the Wage Payment and Collection Act claim is not based on the CBA. The second count of the complaint makes no allegations independent of the IMWL count. *See* R. 6 at ¶¶ 14-18. And Plaintiff has repeatedly disavowed any reliance on the CBA. In other words, the second count is actually a claim that the donning and doffing time that was allegedly unpaid under the IMWL must be paid pursuant to the Wage Payment and Collection Act. If Plaintiff takes a contrary position in state court, that is, if Plaintiff argues that there is indeed an "employment contract or agreement" that requires wages on a basis independent of the IMWL claim, then Kraft may then remove the case because, at that point, Kraft's defense would undoubtedly rely on the CBA. (Of course, Kraft could also argue preemption in state court and rely on the CBA as a defense in the state case.)